PEOPLE v RUSSELL

Docket No. 304159. Submitted June 13, 2012, at Detroit. Decided September 4, 2012, at 9:00 a.m. Leave to appeal denied, 494 Mich ___.

Fred Robert Russell, III, was convicted by a jury in the Wayne Circuit Court of assault with intent to do great bodily harm less than murder, MCL 750.84, and reckless driving causing serious impairment of a body function, MCL 257.626. The victim, Deshun Battle, and an associate of the victim, Dijon Deal, had gone to defendant's hotel room, seeking the return of Deal's laptop computer. Deal observed the laptop in defendant's truck when defendant did not initially come out of the room. Deal began hitting the truck window with a crowbar, which prompted defendant to come out of the hotel room and indicate that he would retrieve the computer. Battle got into his own vehicle, and drove around a corner before stopping to work on his speakers. Defendant got into his truck and drove away instead of retrieving the computer for Deal. Deal pursued defendant on foot. Battle was injured when defendant crashed his car into Battle's vehicle, pinning Battle between the two vehicles. Defendant argued that the accident had occurred because he was watching Deal chase after him in the rearview mirror, rather than what was in front of him. Defendant appealed and moved to remand for an evidentiary hearing on the issue of ineffective assistance of counsel. The Court of Appeals granted the motion in an unpublished order, entered December 15, 2011 (Docket No. 304159). On remand, the court, Carole F. Youngblood, J., granted defendant's motion for a new trial, concluding that trial counsel's failure to call a witness to the incident had denied defendant the effective assistance of counsel.

The Court of Appeals *held*:

1. It is improper for a lower court to exceed the scope of an appellate court's remand order. The trial court's order granting defendant a new trial did not exceed the scope of the Court of Appeals' remand order. The order, which directed the trial court to conduct an evidentiary hearing on the issue of ineffective assistance of counsel, make findings of fact and a determination on the record, granted the court authority to grant or deny the motion for new trial.

2. A new trial may be granted on the basis of ineffective assistance of counsel if the defendant establishes (1) that the trial counsel's performance fell below an objective standard of reasonableness, and (2) that but for the counsel's deficient performance, a different result would have been reasonably probable. An appellate court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight. Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy. The failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense. In addition, the failure to make an adequate investigation constitutes ineffective assistance of counsel if it undermines confidence in the trial's outcome. In this case, the trial court abused its discretion by granting defendant's motion for a new trial. On remand at the evidentiary hearing, Kiesha Yates testified that she was in the hotel room with defendant when she saw one man with a crowbar and one with a bright shiny object hitting defendant's truck. She saw both men run after defendant's truck, as he drove away, while continuing to hold onto the objects in their hands. Defense counsel reviewed Yates's police statement but did not call her as a witness because her statement that two men had chased defendant's vehicle was inconsistent with and contradicted his theory of the case that the victim's injuries were the result of an accident when the victim was hit with the front of defendant's vehicle. Defense counsel was not required to argue that defendant was leaving the parking lot while being pursued by both Deal and the victim because Yates's statement conflicted with the physical evidence. Yates's testimony would have required the victim to be in two places at the same time.

3. A defendant has the right to a public trial, which includes the right to have the courtroom open to the public during jury voir dire. However, the effect of a partial closure of trial does not reach the level of a total closure and only a substantial, rather than a compelling reason for the closure is required. In this case, the trial court did not err by limiting the number of spectators in the court room during jury voir dire. The limited seating capacity in the courtroom constituted a substantial reason for the partial closure.

4. Assault with intent to do great bodily harm less than murder, MCL 750.84, is established by proving (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder. An actor's intent may be inferred from all the facts and circumstances, and because of the difficulty of proving an actor's

state of mind, minimal circumstantial evidence is sufficient. In this case there was sufficient evidence for the jury to find that defendant had committed the crime of assault with intent to do great bodily harm less than murder. A rational jury could have inferred from the confrontation and defendant's acceleration of the vehicle before hitting the victim that defendant had intended to cause the victim great bodily harm. In addition, the jury was free to disbelieve defendant's testimony.

5. In Michigan, each count of an indictment is regarded as if it was a separate indictment and consistency in jury verdicts is not necessary. It is possible for a jury to reach separate conclusions on an identical element of two different offenses. Although consistency is not necessary in Michigan, the verdicts in this case were not inconsistent because defendant's act of driving his vehicle into the victim could have been in willful disregard of the victim's safety, MCL 257.626(2), as well as with the intent to do the victim great bodily harm, MCL 750.84.

Convictions and sentences affirmed and order granting a new trial reversed.

RONAYNE KRAUSE, J., dissenting, would have affirmed the court's conclusion that trial counsel's failure to investigate and call Yates as a witness constituted ineffective assistance of counsel because it deprived defendant of a substantial defense. She was not definitely and firmly convinced that the trial court made a mistake by concluding that Yates's proposed testimony would not contradict the physical evidence but would have contradicted and undermined the victim's testimony.

1. CONSTITUTIONAL LAW — INEFFECTIVE ASSISTANCE OF COUNSEL — TRIAL STRATEGY — INADEQUATE INVESTIGATION.

A new trial may be granted on the basis of ineffective assistance of counsel if the defendant establishes (1) that the trial counsel's performance fell below an objective standard of reasonableness, and (2) that but for the counsel's deficient performance, a different result would have been reasonably probable; an appellate court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight; decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy; the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense; the failure to make an adequate investigation constitutes ineffective assistance of counsel if it undermines confidence in the trial's outcome.

2. CONSTITUTIONAL LAW — RIGHT TO PUBLIC TRIAL — PARTIAL CLOSURE.

> A defendant has the right to a public trial, which includes the right
> to have the courtroom open to the public during jury voir dire; the
> effect of a partial closure of trial does not reach the level of a total
> closure and only a substantial, rather than a compelling reason for
> the closure is required.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training and Appeals, and *Thomas M. Chambers*, Assistant Prosecuting Attorney, for the people.

*Phillip D. Comorski* for defendant.

Before: K. F. KELLY, P.J., and SAWYER and RONAYNE KRAUSE, JJ.

K. F. KELLY, P.J. Defendant appeals as of right his jury trial convictions of assault with intent to do great bodily harm less than murder, MCL 750.84, and reckless driving causing serious impairment of a body function, MCL 257.626. Defendant was sentenced to 19 to 120 months' imprisonment for his assault with intent to do great bodily harm less than murder conviction and 5 to 60 months' imprisonment for his reckless driving causing serious impairment of a body function conviction. We previously entered an order granting defendant's motion to remand so that

> the trial court can conduct an evidentiary hearing and
> defendant-appellant may move for a new trial on the issue
> of ineffective assistance of counsel. In addition to the issue
> of defense counsel's failure to produce a witness, the
> parties may also address whether defense counsel was
> ineffective for not objecting to the closure of the courtroom
> during voir dire and the reasons for closing the courtroom.
> [*People v Russell*, unpublished order of the Court of Appeals, entered December 15, 2011 (Docket No. 304159).]

The trial court held a *Ginther*[1] hearing, found that trial
counsel had been ineffective for failing to call a witness,
and granted defendant's motion for a new trial. We hold
that the trial court complied with the remand order but
erred by granting defendant's motion for a new trial.
We affirm defendant's convictions and sentences.

## I. BASIC FACTS

The victim, Deshun Battle, and an associate of the
victim, Dijon Deal, went to defendant's hotel room,
seeking the return of Deal's laptop computer. After
defendant had failed to emerge from the hotel room to
return the computer, Battle observed a computer in
defendant's truck and pointed it out to Deal. Deal
grabbed a crowbar and began applying the crowbar
against the window of defendant's truck, as if to break
the window. Defendant came out to the parking lot and
indicated that he would retrieve the computer. At that
point, Battle decided that he did not want anything
more to do with the situation. Battle got into his own
vehicle, drove it around a corner and parked it in order
to fix his speakers. Instead of retrieving the computer
as promised, defendant got in his truck, and drove away.
Deal pursued defendant on foot. Defendant claimed
that he had been looking in his rearview mirror when
he crashed into the back of Battle's vehicle, pinning
Battle between the two vehicles. Battle suffered exten-
sive injuries, including the amputation of one of his
legs. The prosecution argued that defendant had inten-
tionally rammed his vehicle into Battle. Defendant denied
that his driving was reckless or that he had intended to
cause Battle harm; instead, defendant explained that it
was simply an accident and that he had not been

---

[1] *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).

looking where he was driving because he had been watching Deal in his rearview mirror.

The jury convicted defendant of assault with intent to do great bodily harm less than murder and reckless driving causing serious impairment of a body function. Defendant appealed his convictions and we granted his motion to remand for a *Ginther* hearing on defendant's claim that defense counsel was ineffective for failing to investigate and call a key witness and for failing to object to the closing of the courtroom during voir dire.

## II. THE *GINTHER* HEARING

At the *Ginther* hearing defendant's girlfriend, Kiesha Yates, testified that she was with defendant at the hotel. She heard loud noises outside their hotel room and saw two men banging on defendant's truck, one with a crowbar, and one with a "shiny metal thing." Defendant then exited the room. Yates saw defendant get into his truck and drive off. She testified that the two men had chased after defendant's vehicle with objects in their hands. Yates gave the police a written statement at the scene; however, she was not contacted by defense counsel David Lankford.

Defendant testified that during trial preparation he told Lankford that Yates was with him at the time of this incident and wished to have her called as a witness. Lankford told defendant that he did not feel comfortable calling civilian witnesses.

Lankford testified that he was aware of Yates and another woman being witnesses to this incident. Lankford never talked to Yates or the other woman personally; however, he did review Yates's police statement. Lankford believed that Yates's statement that two men had chased defendant's vehicle was inconsistent with and contradictory to his theory of the case that Battle

was hit with the front of defendant's vehicle. Lankford assumed that the two men Yates referred to in her statement were Battle and Deal.

The trial court ruled as follows:

> The witness that was not called is Kiesha Yates. She testified that Mr. Russell was her boyfriend. She was in the motel room and she heard loud banging noises outside. She looked out the window and saw two men banging on Mr. Russell's S.U.V. One had a crowbar and the other man had a bright, shiny object in his hand. Mr. Russell then went outside and got into the truck, started the engine and drove away. The two men ran after him both holding onto the objects that they had in their hand.

> This testimony is extremely important. It contradicts the testimony of both alleged victims Mr. Battle and Mr. Deal.

> David Lankford, the defendant's attorney, testified that Mr. Russell did tell him about the testimony of Miss Yates and another woman. He believed that Miss Yates' testimony as told to him by Mr. Russell contradicted his theories and the physical evidence. He did not, however, indicate a theory that was contradicted or the physical evidence that was contradicted.

> Mr. Russell did say that he only saw one man running after his S.U.V., but the statement is not contradicted by Miss Yates because she had a view entirely different than Mr. Russell. She was viewing the vehicle from the outside and Mr. Russell was viewing whoever was chasing him only through the windows of the car.

> It was ineffective assistance of counsel for Mr. Lankford not to call Miss Yates, and even more so not to speak with her, the other female witness and any other witnesses. It is often a mistake to rely only on witnesses' statements and not speak with the witness in person or at least by telephone.

> Not only does Miss Yates' testimony contradict and impeach the testimony of Mr. Battle and Mr. Deal, it

supports the testimony of Mr. Russell. Clearly a different result could have occurred with this testimony.

The trial court rejected defendant's claim that the courtroom had been closed during jury voir dire and declined to grant relief on that basis.

The matter is now before us after remand.

### III. SCOPE OF REMAND ORDER

From the outset, we reject the prosecution's argument that the trial court's order granting defendant a new trial exceeded the scope of this Court's remand order.

When an appellate court remands a case with specific instructions, it is improper for a lower court to exceed the scope of the order. *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 544; 705 NW2d 365 (2005). Again, in relevant part, the order provided:

> The Court orders that the motion to remand pursuant to MCR 7.211(C)(1 ) is GRANTED, and the matter is remanded to the trial court so that the trial court can conduct an evidentiary hearing and defendant-appellant may move for a new trial on the issue of ineffective assistance of counsel. In addition to the issue of defense counsel's failure to produce a witness, the parties may also address whether defense counsel was ineffective for not objecting to the closure of the courtroom during voir dire and the reasons for closing the courtroom.
>
> . . . The trial court is to *hear and decide* the matter within 56 days of the Clerk's certification of this order. Defendant-appellant must also file with the Clerk of this Court copies of all *orders entered* on remand within 14 days after entry.
>
> The *trial court is to make findings of fact **and a determination*** on the record. [Emphasis added.]

We also retained jurisdiction "in the cause and the time for proceeding with the appeal in this Court begins upon issuance of an order in the trial court that finally disposes of the remand proceedings." It would be meaningless for this Court to explicitly direct that a motion be filed without necessarily permitting the trial court to either deny or grant the motion. This is particularly true when the trial court was specifically directed to make a "determination on the record." We could not have been clearer that the trial court had the ability to and was, in fact, directed to make such a determination. Therefore, the lower court order granting defendant's motion for a new trial did not exceed this Court's remand order.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel. We disagree. "We review for an abuse of discretion a trial court's decision to grant or deny a new trial. An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Terrell*, 289 Mich App 553, 558-559, 797 NW2d 684 (2010) (citation omitted). "Whether a person has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. We review the trial court's findings of fact at a *Ginther* hearing for clear error, and review questions of constitutional law de novo." *People v McCauley*, 287 Mich App 158, 162, 782 NW2d 520, 523 (2010) (citation omitted).

> A defendant must meet two requirements to warrant a new trial because of the ineffective assistance of trial counsel. First, the defendant must show that counsel's performance fell below an objective standard of reasonableness. In doing so, the defendant must overcome the strong

presumption that counsel's assistance constituted sound
trial strategy. Second, the defendant must show that, but
for counsel's deficient performance, a different result
would have been reasonably probable. [*People v Armstrong*,
490 Mich 281, 289-290; 806 NW2d 676 (2011) (citations
omitted).]

This Court does not second-guess counsel on matters of
trial strategy, nor does it assess counsel's competence
with the benefit of hindsight. *People v Horn*, 279 Mich
App 31, 39; 755 NW2d 212 (2008).

### A. FAILURE TO CALL KIESHA YATES

Defendant argues that counsel was ineffective for
failing to call Yates as a witness at trial. We disagree.

Decisions regarding whether to call or question wit-
nesses are presumed to be matters of trial strategy.
*People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887
(1999). "[T]he failure to call witnesses only constitutes
ineffective assistance of counsel if it deprives the defen-
dant of a substantial defense." *People v Dixon*, 263 Mich
App 393, 398; 688 NW2d 308 (2004). Similarly, "[t]he
failure to make an adequate investigation is ineffective
assistance of counsel if it undermines confidence in the
trial's outcome." *People v Grant*, 470 Mich 477, 493; 684
NW2d 686 (2004).

In his appellate brief, defendant writes:

The evidence in this case was not overwhelming. Battle
and the other witness, Mr. Deal, gave completely different
accounts of the incident. The only evidence linking [defen-
dant] to the assaultive offense was the testimony of Mr.
Battle. Clearly, Mr. Battle's version of the events (that he
was basically in the wrong place at the wrong time) would
have been severely contradicted by Ms. Yates, who would
have testified that not only was Mr. Battle an active
participant, but that he was also armed with a weapon at
the time [defendant] was attempting to flee the area.

At trial, defendant's theory of the case was that this was a terrible accident and that he simply did not see Battle before the point of contact. During opening statements, defense counsel stated:

> Folks, this is -- it is truly a tragedy. My heart goes out to this young man. He's 20 years old. He's without a leg. But here they have to show one of the three charges intentional act . . . . And I think the evidence will on that last, which is that last count reckless, I think there is some evidence to support the statement that I was being chased by Mr. Deal and didn't realize, didn't see him.

And during closing argument, defense counsel argued:

> Now we know that [defendant] struck Battle who was standing at the back of a Dodge Durango, so let's look at the first part of that. Looking out of his rearview mirror at Deal.
>
> All right. Is there any reason that Mr. Russell would be looking out of his rearview mirror at Deal? Yes, lots of reasons. And, folks, with regards to well Battle had left and he allegedly had a shotgun and whatever, let me just put that to rest real quick. There is no way, there is no evidence that Mr. Russell knew where Mr. Battle was with the Durango. It was on the other side of the building. It obstructs views and it is not until the last possible moment that he could have even been aware of it. That is -- that's a fact.

At the *Ginther* hearing, defense counsel testified that Yates's "statement was, in my opinion, contradictory, inconsistent with the theory of the case" and "entirely inconsistent with the physical evidence." Counsel explained that "I didn't see how Mr. Battle could be chasing that vehicle and then basically end up in front of the path of the Tahoe."

We believe that the trial court abused its discretion by granting defendant a new trial. Specifically, we fail to see how defense counsel's decision not to call Yates as a

witness was anything other than sound trial strategy. Defendant argues that Yates's potential testimony would have contradicted Battle's testimony that Battle was simply in the wrong place at the wrong time when he was struck by the vehicle. Defendant believes that defense counsel should have set forth a theory that defendant was racing out of the parking lot in order to avoid Deal, who was wielding a crow bar, and Battle, who was wielding a gun. But Yates's statement conflicted with the physical evidence. Michigan State Police Sergeant Kevin Lucidi testified that defendant's vehicle was traveling at a rate of approximately 19 miles per hour just prior to his airbag deploying. Assuming (as does defendant) that Battle was one of the two individuals who had pursued defendant's vehicle on foot, an untenable conclusion would have to be drawn—that Battle initially ran behind defendant's vehicle, passed it on foot at a speed of over 19 miles per hour, and then positioned himself behind his own vehicle before the point of impact. We cannot fault defense counsel for failing to call Yates as a witness when her testimony would have required Battle to be in two places at the same time.

Furthermore, even if defense counsel's decision not to further investigate Yates fell below an objective standard of reasonableness, defendant has failed to show that defense counsel's decision not to call Yates as a witness prejudiced him. Defense counsel argued that this incident was an accident; defendant was looking in his rearview mirror at Deal when he hit Battle, who was in front of him. Defendant was not denied a substantial defense. Furthermore, it is unclear how Yates's testimony would have contributed to this defense given that it seems contradictory. Defendant failed to show that he was denied the effective assistance of counsel, and the

trial court abused its discretion by granting defendant's motion for a new trial.

### B. FAILURE TO OBJECT TO CLOSURE OF THE COURTROOM

Defendant argues that defense counsel was ineffective by failing to object to the partial closure of the courtroom during jury voir dire, thereby depriving defendant of his right to a public trial, as guaranteed by the Sixth Amendment, US Const, Am VI. We disagree.

Defense counsel and the trial court engaged in the following dialogue before trial:

> *Mr. Lankford*: There are a couple of family members on both sides.
>
> We are -- not going to be a lot of room here while selecting the jury, so I don't know if you want to deal with the people that are here for support for one side or the other.
>
> *The Court*: Each side can have one person sit on that special bench right there.
>
> Now, Mr. Lankford, are you calling witnesses?
>
> *Mr. Lankford*: It would be only the defendant possibly, judge.
>
> *The Court*: Okay. So none of the people here in support of the defendant would be called as witnesses?
>
> *Mr. Lankford*: No.
>
> *The Court*: Well of course they can be in the courtroom the whole time then but not while we pick -- only one while we're picking the jury or two maybe.

Defendant did not object to the partial closure. Our Supreme Court recently held that the forfeiture rule stated in *People v Carines*[2] applies with equal force to a defendant's claim that the trial court violated his Sixth

---

[2] *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

Amendment right to a public trial. *People v Vaughn*, 491 Mich 642, 664 821 NW2d 288 (2012). As such, defendant must establish (1) that an error occurred, (2) that the error was "plain," (3) that the error affected his substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity or public reputation of judicial proceedings. *Id.* at 664-665.

A defendant has the right to a public trial, which includes the right to have the courtroom open to the public during jury voir dire. Id. at 650-652. However, the effect of a partial closure of trial does not reach the level of a total closure and only a substantial, rather than a compelling reason for the closure is required. *People v Kline*, 197 Mich App 165, 170; 494 NW2d 756 (1992).

The record reveals that the voir dire proceedings were partially closed as a result of the limited capacity of the courtroom. The limited capacity of the courtroom was a substantial reason for the closure, and thus, this partial closure did not deny defendant his right to a public trial. Furthermore, defense counsel was not ineffective by failing to object, because there was no error. See *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004) ("[T]rial counsel is not ineffective when failing to make objections that are lacking in merit.").

### V. SUFFICIENCY OF THE EVIDENCE

Next, defendant argues that the evidence was insufficient to establish the intent element of assault with intent to do great bodily harm less than murder. We disagree.

.

"This Court reviews de novo challenges to the sufficiency of the evidence to determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Lockett*, 295 Mich App 165, 180; 814 NW2d 295 (2012) (quotation marks and citation omitted). This Court reviews the evidence in the light most favorable to the prosecution. *Id.*

"The elements of assault with intent to do great bodily harm less than murder are: (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (quotation marks and emphasis omitted). Intent to do great bodily harm is intent to do serious injury of an aggravated nature. *Id.* "An actor's intent may be inferred from all the facts and circumstances, and because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v Gonzalez*, 256 Mich App 212, 226; 663 NW2d 499 (2003) (quotation marks omitted). "[A] jury is free to believe or disbelieve, in whole or in part, any of the evidence presented." *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999).

The evidence established that Battle and Deal went to defendant's hotel room to confront defendant about Deal's laptop and to retrieve it from defendant. Battle and Deal asked for the laptop once or twice. Defendant assured them that he was going to get the laptop. After defendant neglected to retrieve Deal's laptop, which Battle saw in defendant's truck that was parked right in front of defendant's hotel room, Deal went to defendant's truck, acted like he was going to smash defendant's window, and then actually hit the window once. When defendant saw Deal hit his truck window, he

came out of the hotel room and said, "Wait. Hold on." Defendant initially acted as though he was going to retrieve the laptop, but instead got into his truck, backed up, and pulled away. As defendant was backing up, Deal threw the crowbar at defendant's vehicle and then chased the vehicle. Defendant then struck Battle with his vehicle.

Michigan State Police Sergeant Kevin Lucidi testified as an expert in crash reconstruction. Lucidi testified that just before the airbag of defendant's vehicle deployed, the vehicle was accelerating and going approximately 19 miles per hour.

A rational jury could have inferred from the recent confrontation, coupled with the evidence that defendant was accelerating his vehicle before hitting Battle, that defendant had intended to cause Battle great bodily harm. Additionally, the jury was free to disbelieve the evidence that defendant was looking into his rearview mirror when he struck Battle. Therefore, the evidence was sufficient for a rational trier of fact to find that defendant committed assault with intent to do great bodily harm less than murder.

### VI. INCONSISTENT VERDICTS

Finally, defendant argues that his verdicts were inconsistent and require reversal of his conviction of assault with intent to do great bodily harm less than murder. We disagree.

This Court reviews de novo questions regarding inconsistent verdicts, which are constitutional issues. See *People v Vaughn*, 409 Mich 463, 465-467; 295 NW2d 354 (1980). Under Michigan law, each count of an indictment is regarded as if it were a separate indictment and consistency in jury verdicts is not necessary. *Id.* at 465-466. Also, "it is possible for a jury to reach

separate conclusions on an identical element of two different offenses." *People v Garcia*, 448 Mich 442, 464; 531 NW2d 683 (1995).

The Michigan Vehicle Code, MCL 257.1 *et seq.*, defines reckless driving as driving "in willful or wanton disregard for the safety of persons or property . . . ." MCL 257.626(2). Anyone who violates MCL 257.626(2), and in doing so causes serious impairment of a body function to another person, is guilty of a felony. MCL 257.626(3). "The elements of assault with intent to do great bodily harm less than murder are: (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *Brown*, 267 Mich App at 147 (quotation marks and emphasis omitted). This Court has recognized that "[s]pecific intent has been defined as 'meaning some intent in addition to the intent to do the physical act which the crime requires,' while general intent 'means an intent to do the physical act—or, perhaps, recklessly doing the physical act—which the crime requires.'" *People v Lerma*, 66 Mich App 566, 569; 239 NW2d 424 (1976), quoting LaFave & Scott, Criminal Law, p. 343.

Defendant asserts the inconsistency of the verdicts with regard to the intent elements of the respective charges. Defendant's verdicts were not necessarily inconsistent. Defendant's act of driving his vehicle into Battle could have been in willful disregard of Battle's safety and simultaneously with the intent to do Battle great bodily harm. Even so, consistency in jury verdicts in criminal cases is not necessary. *Garcia*, 448 Mich at 464; *Vaughn*, 409 Mich at 465-467. Defendant's claim is without merit.

Defendant's convictions and sentences are affirmed and the order granting new trial is reversed.

Sawyer, J., concurred with K. F. Kelly, P.J.

Ronayne Krause, J. (*dissenting*). I respectfully dissent from the majority's conclusion that the trial court abused its discretion by granting defendant's motion for a new trial.[1] I would therefore affirm the trial court's order and remand for further proceedings consistent with that order.

To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance resulted in prejudice. *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). Determining the issue of effectiveness of counsel entails an analysis of the facts and of the law; the trial judge "must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel." *Id*. at 289 (quotation marks omitted). We review the trial court's factual findings for clear error, meaning we must be definitely and firmly convinced that the trial court made a mistake in its factual findings. *Id*. We review de novo questions of law. *Id*. We also review de novo whether a defendant was prejudiced. *People v Dendel*, 481 Mich 114, 132 n 18; 748 NW2d 859 (2008). "A trial court's decision to grant or deny a motion for a new trial is reviewed for an abuse of discretion." *People*

_____

[1] I note that the majority and I unanimously agree that the trial court was fully authorized to grant the motion by this Court's remand order. I feel it is worth emphasizing what the majority already states, that it would be absurd for this Court to have explicitly directed that a motion be made without necessarily, if impliedly, permitting the trial court to either deny or grant that motion. The majority and I disagree as to whether the trial court's determination arrived at the proper conclusion, *not* as to whether the trial court was empowered to make that determination.

*v Blackston*, 481 Mich 451, 460; 751 NW2d 408 (2008) (citation omitted). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *People v Terrell*, 289 Mich App 553, 559; 797 NW2d 684 (2010).

A defendant is entitled to a new trial on the basis of ineffective assistance of counsel if two requirements are satisfied: first, that counsel's performance was objectively unreasonable and second, that it was reasonably probable that the outcome of the proceedings would have been different but for counsel's deficient performance. *Armstrong*, 490 Mich at 289-290. Defendant's claim of ineffective assistance is premised on his trial counsel's failure to call an eyewitness to some of the events that immediately led up to the specific events on which defendant's convictions were based. Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). This Court does not generally second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008).

However, an attorney's "failure to call witnesses . . . constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004). Additionally, the failure to call a witness may constitute ineffective assistance of counsel when the witness' testimony is substantial, even when the testimony is cumulative. *People v Johnson*, 451 Mich 115, 120-124; 545 NW2d 637 (1996).

Importantly, therefore, whether counsel's failure to call a witness or investigate a potential witness was objectively deficient may depend significantly on a factual inquiry into the effect the witness might have had on the outcome of the proceedings.

During the trial, defendant's theory of the case was that the victim, Deshun Battle, and an associate of the victim, Dijon Deal, had come to his hotel room seeking the return of a laptop computer. Deal held a crowbar, and at one point defendant indicated that he believed Battle had a shotgun. Deal began applying the crowbar against the window of defendant's truck, as if to break the window. Defendant exited the hotel room, got in his truck, and attempted to drive away while being pursued by Deal. Meanwhile, Battle, according to his own testimony, drove his own car around a corner, parked it, and exited the vehicle to perform maintenance on his car's speakers. Defendant claimed to have been looking in his rearview mirror at the man chasing him when he crashed into the back of the other vehicle, pinning Battle between the two vehicles. In other words, defendant's theory was that his driving was neither reckless under the circumstances nor was it the product of any sort of intent to cause harm.

At the *Ginther* hearing,[2] Kiesha Yates, defendant's girlfriend and the person defendant argues his trial counsel should have called as a witness at trial, testified that she had been with defendant at the hotel. She heard some loud noises outside their hotel room. She looked out of the window and saw two men banging on defendant's truck, one with a crowbar, and one with a

---

[2] *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973). This Court's remand order only referred to an "evidentiary hearing," but as the majority indicates, the trial court correctly interpreted this as a remand specifically for a *Ginther* hearing.

"shiny metal thing." Defendant then exited the room. From the window of the room, Yates saw defendant get into his truck and drive off. The two men chased after defendant's vehicle with objects in their hands. Yates gave the police a written statement at the scene; however, she was not contacted by defense counsel. Defendant testified that during trial preparation, he told defense counsel that Yates was with him at the time of this incident, and that he wished to have her called as a witness. However, defense counsel indicated that he did not feel comfortable calling "civilian" witnesses.

Defense counsel testified that he was aware that Yates and another woman witnessed the incident. Defense counsel never talked to Yates or the other woman personally. However, he did review Yates's police statement. Defense counsel believed that Yates's statement that two men chased defendant's vehicle was inconsistent or contradictory to his theory of the case that Battle was hit with the front of defendant's vehicle. Defense counsel assumed without knowing that the two men Yates referred to in her statement were Battle and Deal. However, he conceded that Yates's statement did not necessarily contradict the physical evidence.

The trial court concluded that trial counsel was ineffective because of his failure to investigate and to call a particular witness. The court reasoned:

> The witness that was not called is Kiesha Yates. She testified that Mr. Russell was her boyfriend. She was in the motel room and she heard loud banging noises outside. She looked out the window and saw two men banging on Mr. Russell's S.U.V. One had a crowbar and the other man had a bright, shiny object in his hand. Mr. Russell then went outside and got into the truck, started the engine and drove away. The two men ran after him both holding onto the objects that they had in their hand.

This testimony is extremely important. It contradicts the testimony of both alleged victims Mr. Battle and Mr. Deal.

. . . The defendant's attorney, testified that Mr. Russell did tell him about the testimony of Miss Yates and another woman. He believed that Miss Yates' testimony as told to him by Mr. Russell contradicted his theories and the physical evidence. He did not, however, indicate a theory that was contradicted or the physical evidence that was contradicted. ·

Mr. Russell did say that he only saw one man running after his S.U.V., but the statement is not contradicted by Miss Yates because she had a view entirely different than Mr. Russell. She was viewing the vehicle from the outside and Mr. Russell was viewing whoever was chasing him only through the windows of the car.

It was ineffective assistance of counsel for [defense counsel] not to call Miss Yates, and even more so not to speak with her, the other female witness and any other witnesses. It is often a mistake to rely only on witnesses' statements and not speak with the witness in person or at least by telephone.

Not only does Miss Yates' testimony contradict and impeach the testimony of Mr. Battle and Mr. Deal, it supports the testimony of Mr. Russell. Clearly a different result could have occurred with this testimony.

The only defense presented in support of defendant's case was made during closing argument. Again, defense counsel argued that defendant "was looking out of his rearview mirror at Deal when he struck Battle who was standing at the back of the Dodge Durango [Battle's vehicle]." Counsel also argued that there was no evidence that defendant knew where Battle was physically located at the time of the incident.

I note initially that counsel's subjective discomfort with "civilian witnesses," whatever those might be in this context, is simply not, at least to my mind, a sound

strategic reason for failing to investigate or call any
such witness who could cast doubt on the credibility of
a complainant or other prosecution witness. More sig-
nificantly, the applicable standard of review in this case
is that of reviewing the trial court's factual findings for
clear error, there being no real legal dispute before this
Court that I can discern. Consequently, our inquiry is
not whether we would have arrived at the same conclu-
sions, but whether the trial court's conclusions defi-
nitely appear wrong.[3]

I find no clear error in the trial court's conclusion
that, contrary to defense counsel's view of Yates's
testimony, she did not contradict either defendant's
theory of the case or the physical evidence. It is
common knowledge that the viewing perspective from
inside a moving vehicle is not perfect; the fact that
defendant apparently did not see Battle in his rear-
view mirror does not constitute evidence that Battle
was not giving chase. Furthermore, because defen-
dant apparently never exceeded 20 miles an hour and
went around a corner, there is no reason why Battle
could not have initially pursued defendant from be-
hind and ended up running in front of him. The
majority finds this possibility "untenable," however
as I interpret the evidence, this runner could have
taken a "short cut" across the corner to get in front of
the SUV. This scenario is certainly not impossible or
contrary to the physical evidence, and I find it
plausible enough that I can imagine no sound strate-
gic reason not to seek to present it to a jury. It is also
not the likeliest of scenarios, but our role on appeal

_____

[3] This Court should not "simply defer to the trial court's judgment
regarding prejudice." *Dendel*, 481 Mich at 132 n 18. However, I do not
believe *Dendel* dictates that the trial court's conclusion is entitled to no
deference. In any event, I believe the analysis critical to the outcome of
this appeal is more factual, and the trial court's conclusions of fact are
entitled to deference.

is not to determine what conclusion we would have drawn had we been sitting as the trial court, but rather whether we are definitely and firmly convinced that the trial court made a mistake.

At the same time Yates's testimony supports the possibility that Battle was armed with a shotgun, and it directly contradicts Battle's testimony that he had departed from the dispute before defendant got into his truck. If the jury had chosen to find her testimony credible—which is not an assessment we may make—it could have found that Battle was not merely "minding his own business" elsewhere but was instead participating in armed pursuit of defendant with a weapon capable of killing defendant, notwithstanding the fact that defendant was inside a moving vehicle. The jury could have found that under the circumstances defendant was neither driving recklessly nor intending to harm Battle.

I am not definitely and firmly convinced that the trial court made a mistake by concluding that Yates's proposed testimony would not contradict the physical evidence but would have contradicted and undermined Battle's testimony. *People v Mullen*, 282 Mich App 14, 22; 762 NW2d 170 (2008). The trial court is in the better position to evaluate the credibility of the witnesses who appeared before it, both at trial and at the *Ginther* hearing. The trial court will have to hear the matter again on retrial and its findings are entitled to deference. Yates's testimony would have weakened the prosecution's case and supported defendant's defense. The trial court's conclusion that her testimony was sufficiently important and that counsel's failure to investigate and call her as a witness deprived defendant of a substantial defense and undermined confidence in the outcome of the trial should be affirmed. Because I

can discern no sound strategic reason for defense counsel's failure to offer Yates's testimony, I conclude that the trial court did not abuse its discretion by granting defendant's motion for a new trial, and I would affirm that order and remand for further proceedings.