# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BARRY DAVIS SHAW,

        Defendant-Appellant.

FOR PUBLICATION
June 14, 2016

No.  313786
Ingham Circuit Court
LC No.  12-000206-FC

Before:  GLEICHER, P.J., and JANSEN and SHAPIRO, JJ.

JANSEN, J. (*dissenting*).

I respectfully dissent from the majority opinion reversing defendant's convictions and remanding for a new trial.  I would affirm defendant's convictions because I believe that this Court should not substitute its judgment for that of the trial court, which made specific findings in an opinion following a *Ginther*[1] hearing, which rejected defendant's alleged claims of error.

The majority discusses several bases for reversal, including (1) ineffective assistance of counsel for failure to object to hearsay testimony, (2) ineffective assistance of counsel for failure to present evidence of an alternative source of the victim's injuries, and (3) the admission of improper impeachment testimony.  I disagree that any of the alleged errors in this case warrant reversal.

## I.  INEFFECTIVE ASSISTANCE OF COUNSEL

The majority concludes that trial counsel rendered ineffective assistance when he (1) failed to object to hearsay statements by members of the victim's family, as well as Dr. Stephen Guertin and Lansing Police Detective Elizabeth Reust, and (2) failed to present evidence of an alternative source of the victim's injuries.  I disagree that trial counsel's conduct rises to the level of ineffective assistance of counsel.

A defendant must meet two requirements to warrant a new trial because of the ineffective assistance of trial counsel.  First, the defendant must show that

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

counsel's performance fell below an objective standard of reasonableness. In doing so, the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy. Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable. [*People v Russell*, 297 Mich App 707, 715-716; 825 NW2d 623 (2012) (citation and quotation marks omitted).]

This Court will not evaluate defense counsel's conduct with the benefit of hindsight. *Id*. at 716.

## A. FAILURE TO OBJECT TO HEARSAY STATEMENTS

The majority takes issue with defense counsel's failure to object to certain hearsay statements made at trial. MRE 802 prohibits admission of hearsay except as provided by the Michigan Rules of Evidence. See MRE 802. MRE 801(c) defines "hearsay" as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(a) defines a "statement" as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion."

The majority first concludes that trial counsel rendered ineffective assistance when he failed to object to testimony of the victim's family members regarding the fact that the victim told them that defendant had sexually abused her. I agree that the statements constituted hearsay. However, as the trial court noted in its opinion and order denying defendant's motion for a new trial, it became clear during the trial that Brooke, the victim's sister, no longer believed the victim's claims. She testified that her relationship with the victim is strained. Furthermore, she explained that she does not have a problem letting defendant stay with her children, who were five years old and seven years old at the time of trial. Trial counsel explained during the *Ginther* hearing that he anticipated that Elizabeth and Laura, the victim's cousins, would provide neutral testimony that they heard about the assault. Therefore, I fail to see how there was a reasonable likelihood that, but for defense counsel's conduct, the result of the proceeding would have been different. Instead, it appears that the failure to object to the hearsay statements was to defendant's benefit since it opened the door for additional testimony regarding the fact that the victim was not credible and supported defendant's theory at trial that the victim was not truthful. This testimony from the victim's own family member was extremely beneficial to defendant at trial and not otherwise admissible. Furthermore, as the trial court noted, the testimony of the witnesses was cumulative to the victim's testimony regarding the incidents, and I do not believe that there was a reasonable probability that, but for the admission of the cumulative testimony, the result of the trial would have been different. For these reasons, I do not believe that defense counsel's failure to object to the hearsay statements constituted ineffective assistance of counsel and in fact, when viewed overall, were exceedingly beneficial to defendant.

The majority also concludes that Dr. Guertin's testimony regarding the victim's statement that defendant sexually molested her and her description of the details of the sexual activity constituted inadmissible hearsay. The majority further holds that trial counsel's failure to object rose to the level of ineffective assistance of counsel. I agree with the majority that to the extent that the victim sought out Dr. Guertin in relation to a police investigation of the abuse, rather than for the purpose of medical treatment in relation to the abuse, her statements would not

-2-

constitute statements for the purpose of medical treatment under MRE 803(4). However, Dr. Guertin also testified that the victim expressed her concern that, as a result of the years of abuse, she could not have children. Because the victim's statements were both for medical evaluation and forensic investigation on her criminal allegations, I would conclude that the statements are admissible under MRE 803(4) as they can be construed as having a dual basis for admission. However, even assuming that the statements did constitute inadmissible hearsay, I believe that trial counsel's failure to object to the hearsay statements constituted reasonable trial strategy. Defense counsel explained that he permitted Dr. Guertin to testify regarding the hearsay statements because he planned to use them later in the trial to impeach the victim. Defense counsel did not end up revealing every inconsistency at trial. I do not believe that the fact that defense counsel failed to address all of the inconsistencies in the testimony renders his trial strategy unsound. Additionally, the fact that defense counsel's strategy was ultimately unsuccessful does not give rise to ineffective assistance of counsel. Therefore, I conclude that defendant fails to overcome the strong presumption that defense counsel's failure to object to Dr. Guertin's testimony constituted sound trial strategy.

Lastly, the majority concludes that Detective Reust's testimony recounting the victim's out-of-court statements regarding the abuse and other events constituted inadmissible hearsay, and the failure to object to admission of the testimony rose to the level of ineffective assistance. Detective Reust testified at trial that the victim informed her that defendant molested her, and she described the details of what the victim told her had occurred. Detective Reust testified that she was able to obtain some background facts from the victim for her investigation. During the *Ginther* hearing, defense counsel explained that he permitted Detective Reust to testify without objection in order to connect the crimes with the charges, and he believed that Detective Reust was the best witness to discuss the time frame for the incidents. He also believed that he could use Detective Reust's testimony to point out inconsistencies in the victim's story. As with Dr. Guertin, defense counsel did not ultimately bring to light every inconsistency between the victim's testimony and her prior statements because he wished to avoid bringing up bad facts and did not want to permit the victim to clear up the inconsistencies in her testimony. However, I do not believe that this renders defense counsel's trial strategy unsound. Furthermore, as noted in the trial court's opinion and order, "[m]ost if not all of the 'corroborated facts' were innocuous and were testified to by other witnesses, including Yvonne Shaw, Michael Bailey, Brooke Lewis, and Betty Elliot." Thus, there is not a reasonable probability that, but for defense counsel's failure to object, the result of the trial would have been different. Accordingly, I do not believe that defense counsel's conduct constituted ineffective assistance of counsel since his failure to object was a sound trial strategy.

## B. FAILURE TO PRESENT TESTIMONY

The majority next concludes that defense counsel rendered ineffective assistance when he failed to present the testimony of the victim's former boyfriend, Bradley August, regarding the fact that the victim and August engaged in consensual vaginal and anal sexual intercourse. I agree with the trial court that defense counsel did not render ineffective assistance by failing to present evidence that the victim engaged in consensual sexual intercourse in the years following the alleged sexual abuse, but before Dr. Guertin examined her. I disagree with the majority's conclusion that there was no likely explanation for the damage to the victim's vagina and anus other than the sexual assault. Defense counsel explained during the *Ginther* hearing that he did

not question August regarding the victim's sexual activity because he believed that the line of questioning was barred by the rape shield law and because he believed that the testimony was unimportant in light of the fact that the victim testified that she had engaged in consensual sexual intercourse. Defense counsel then utilized the evidence in the record to make an argument that the vaginal and anal injuries observed by Dr. Guertin did not stem from injuries inflicted by defendant. As noted by the trial court, Dr. Guertin testified that it was possible that the injuries to the victim's vagina occurred through adult consensual sex, and Dr. Guertin further testified that the victim had engaged in adult consensual sex. There was also testimony that the victim began using birth control at the age of 17 and that August lived with the victim during their relationship. Defense counsel argued during his closing argument that the vaginal injuries were most likely due to adult consensual sex. I agree with the trial court that it was unnecessary for the victim's former boyfriend to testify that he had consensual sexual intercourse with the victim since the testimony in the case established that the victim had engaged in consensual sexual intercourse as an adult. I disagree with the majority's conclusion that Dr. Guertin's testimony that the victim had adult consensual sex was insufficient for the jury to conclude that the victim had a sexual relationship before the medical examination. Thus, as noted by the trial court, allowing August to testify that he had vaginal intercourse with the victim would be "unnecessary, unduly prejudicial, and unlawful," and the probative value of the testimony would have been outweighed by its prejudicial effect. See MRE 403.

With regard to anal sexual intercourse, Dr. Guertin testified that more recent anal sexual intercourse would explain how an injury that occurred during a sexual assault years before trial would still be present at the time of the medical examination. Dr. Guertin also testified that the injury he observed on the victim's anus could still be present if the victim passed large stool, although this was less likely. Dr. Guertin was unable to state when the anal injury occurred. Thus, testimony that the victim engaged in consensual anal sexual intercourse with August would have actually *harmed* defendant's case since it would have explained why an injury that occurred years before when defendant allegedly engaged in anal sexual intercourse with the victim would not have healed before the examination. The testimony would have bolstered the victim's claim that defendant engaged in anal sexual intercourse with her. Furthermore, defense counsel properly pursued the theory that the chronic anal fissure that Dr. Guertin saw on the victim came from a large volume of stool, diarrhea, constipation, or other anal sexual activity. I believe that defense counsel's strategy properly addressed the issue, and I do not believe that defense counsel's failure to call August as a witness constituted ineffective assistance of counsel.

## II. IMPEACHMENT TESTIMONY

The majority concludes that the trial court erred when it admitted the testimony of Lansing Police Officer Kasha Osborn regarding a statement that the victim's brother made to her. I believe that, to the extent that the trial court erred in admitting the testimony of Officer Osborn regarding the statement of the victim's brother, the error was harmless. As the majority notes, the brother's testimony had little probative value and related only to background evidence. Even assuming that the prosecution improperly utilized the brother's denial of the statement to introduce substantive evidence, I do not see how the testimony had any bearing on the central issue in this case regarding whether defendant sexually assaulted the victim. The testimony involved an incident that occurred years earlier in which defendant informed the victim that she was in trouble and grabbed the neck of the victim's mother while threatening to kill her.

Considering that there was ample testimony at trial that defendant sexually assaulted the victim, I do not believe that the admission of Officer Osborn's testimony regarding an unrelated incident that occurred years before trial had any effect on the outcome of trial. The majority concedes that the admission of the testimony may have constituted harmless error if there were no additional errors in this case. Because I conclude that there were no additional errors in this case that prejudiced defendant, I conclude that, to the extent that there was an error, the error was harmless.

The very experienced trial court judge issued a very complete and well thought-out 40-page opinion after the *Ginther* hearing addressing each of defendant's allegations of error and rejecting them. For the reasons discussed above, I believe that the trial court correctly denied defendant's motion for a new trial. Accordingly, I would affirm.


/s/ Kathleen Jansen